54. As a result of its negligence, or breach of its duties and obligations, Pudong is liable to ESM Group for its losses and damages of about $1.1 million, as shall be proven at trial.

## SECOND CROSS-CLAIM AGAINST PUDONG

55. The foregoing allegations, in paragraphs 1 through 22 and 50 through 54, are repeated and incorporated by reference herein.

56. As shall be proven at trial, because Pudong breached its duties and obligations owed to ESM Group, and is solely or primarily liable and responsible for the destruction of the Goods and all of the damages resulting from the Casualty, ESM Group is entitled to contribution, indemnity, and/or recoupment from Pudong for all or part of any liability or judgment against ESM Group, and/or any related payment by ESM Group in relation to the claims arising from the Casualty.

WHEREFORE, Defendant and Third-Party Defendant ESM Group, demands judgment in favor of ESM Group, on its Counterclaims against Chem One, and its Cross-Claims and Counterclaims against the Rickmers Interests, and its Cross-Claims against U.S. Shipping and Pudong, together with the recoverable costs of this action, and such other relief as this Court deems reasonable, just and appropriate in the circumstances.

Dated:   New York, NY
        February 17, 2006

                                      BURKE & PARSONS
                                      Attorneys for Defendant
                                      ESM GROUP INC.

                              By   s/ Christopher H. Dillon
                                    Christopher H. Dillon (7321)
                                    100 Park Avenue
                                    New York NY  10017-5533
                                    (212 )354-3800

Of Counsel:
    Raymond J. Burke, Jr.

8927_0010_S01.DOC

47.  As a result of its negligence, or the breach of its duties and obligations, U.S. Shipping is liable to ESM Group for its losses and damages of about $1.1 million, as shall be proven at trial.

## SECOND CROSS-CLAIM AGAINST U.S. SHIPPING

48.  The foregoing allegations, in paragraphs 1 through 22 and 43 through 47, are repeated and incorporated by reference herein.

49.  As shall be proven at trial, because U.S. Shipping breached its duties and obligations owed to ESM Group, and is solely or primarily liable and responsible for the destruction of the Goods and all of the damages resulting from the Casualty, ESM Group is entitled to contribution, indemnity, and/or recoupment from U.S. Shipping for all or part of any liability or judgment against ESM Group, and/or any related payment by ESM Group in relation to the claims arising from the Casualty.

## FIRST CROSS-CLAIM AGAINST PUDONG

50.  The foregoing allegations, in paragraphs 1 through 22, are repeated and incorporated by reference herein.

51.  At all pertinent times, Pudong was the contractually-responsible carrier of the Goods and owed ESM Group, as holder of its bill of lading, the duties imposed by that bill of lading and the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. ("COGSA"), to ensure that Rickmers Genoa was seaworthy, properly manned, equipped and supplied and that the holds and all other parts of the ship where the Goods were to be carried were fit and safe for their reception, carriage and preservation, and to carefully load, handle, stow, carry, keep, care for and discharge the Goods safely.

52.  The Casualty and the resultant destruction of the Goods were not caused or contributed to by any act, omission, or breach of obligations on the part of ESM Group.

53.  The Casualty and the resultant destruction of the Goods were primarily, or partly, caused by acts or omissions of Pudong.

times unseaworthy and not reasonably fit for the safe carriage of the Goods and other cargoes transported during the subject voyage.

39. The Casualty and the destruction of the Goods were proximately caused by the unseaworthiness of Rickmers Genoa.

40. As a result of the breach of their duties to provide a seaworthy vessel, the Rickmers Interests are liable to ESM Group for its losses and damages of about $1.1 million, as shall be proven at trial.

### THIRD CROSS-CLAIM AND COUNTERCLAIM AGAINST THE RICKMERS INTERESTS

41. The foregoing allegations, in paragraphs 1 through 22 and 30 through 40, are repeated and incorporated by reference herein.

42. As shall be proven at trial, because the Rickmers Interests breached their duties and obligations owed to ESM Group, and are solely or primarily liable and responsible for the destruction of the Goods and all of the damages resulting from the Casualty, ESM Group is entitled to contribution, indemnity, and/or recoupment from the Rickmers Interests for all or part of any liability or judgment against ESM Group, and/or any related payment by ESM Group in relation to the claims arising from the Casualty.

### FIRST CROSS-CLAIM AGAINST U.S. SHIPPING

43. The foregoing allegations, in paragraphs 1 through 22, are repeated and incorporated by reference herein.

44. U.S. Shipping negligently performed its duties and breached its obligations relating to the Goods.

45. The Casualty and the resultant destruction of the Goods were not caused or contributed to by any act, omission, or breach of obligations on the part of ESM Group.

46. The Casualty and the resultant destruction of the Goods were primarily, or partly, caused by the acts or omissions of U.S. Shipping.

## FIRST CROSS-CLAIM AND COUNTERCLAIM
## AGAINST THE RICKMERS INTERESTS

30. The foregoing allegations, in paragraphs 1 through 22, are repeated and incorporated by reference herein.

31. The Rickmers Interests owed a duty to properly and carefully load, handle, stow, carry, keep, care for and discharge the Goods in the same good order and condition as when received by them.

32. By their respective negligent acts, omissions, design or neglect in failing to properly and carefully handle, stow, carry, keep, care for and discharge the Goods, the Rickmers Interests breached their respective duties of care, and their statutory and bailment obligations and caused the Casualty and destroyed the Goods.

33. The Casualty and the resultant destruction of the Goods were not caused or contributed to by any act, omission, or breach of obligations on the part of ESM Group.

34. The Casualty and the resultant destruction of the Goods were caused proximately by acts or omissions of the Rickmers Interests.

35. As a result of their negligence, or breach of their duties and obligations, the Rickmers Interests are liable to ESM Group for its losses and damages of about $1.1 million, as shall be proven at trial.

## SECOND CROSS-CLAIM AND COUNTERCLAIM
## AGAINST THE RICKMERS INTERESTS

36. The foregoing allegations, in paragraphs 1 through 22 and 30 through 35, are repeated and incorporated by reference herein.

37. The Rickmers Interests owed a duty to all cargo carried onboard the Rickmers Genoa, including the Goods, to provide a seaworthy vessel.

38. The Rickmers Interests breached this duty and/or failed to exercise due diligence to make the Rickmers Genoa seaworthy in that its master, officers and/or crew were not properly trained and/or competent, and its holds, equipment and appurtenances were at all pertinent

## FIRST COUNTERCLAIM AGAINST CHEM ONE

23. The foregoing allegations, in paragraphs 1 through 22, are repeated and incorporated by reference herein.

24. The chemicals onboard Rickmers Genoa belonging to Chem One, were corrosive, acidic and dangerous. To the extent that Chem One may owe a duty or obligation to avoid having its cargo cause damage relating to the Casualty, Chem One would be wholly, or partly, liable to ESM Group for the destruction of the Goods by reason of its negligence, failure to warn, products liability, strict liability, statutory liability or other legal responsibilities.

25. The Casualty and the resultant destruction of the Goods were not caused or contributed to by any act, omission, or breach of obligations on the part of ESM Group.

26. The Casualty and the resultant destruction of the Goods were primarily, or partly, caused by the chemicals onboard Rickmers Genoa belonging to Chem One.

27. As a result of its negligence, or breach of its duties and obligations, Chem One would be liable to ESM Group for its losses and damages of about $1.1 million, as shall be proven at trial.

## SECOND COUNTERCLAIM AGAINST CHEM ONE

28. The foregoing allegations, in paragraphs 1 through 22, are repeated and incorporated by reference herein.

29. As shall be proven at trial, because Chem One may have breached duties and obligations owed to ESM Group, and would be solely or primarily liable and responsible for the destruction of the Goods and all of the damages resulting from the Casualty, ESM Group should be entitled to contribution, indemnity, and/or recoupment from Chem One for all or part of any liability or judgment against ESM Group, and/or any related payment by ESM Group in relation to the claims arising from the Casualty.

13. The Goods were delivered in Tianjin, China to the care of Pudong for transportation to Baltimore under Pudong's bill of lading.

14. Pudong contracted with the Rickmers Interests for the Goods to be transported on Rickmers Genoa, from the port of Xingang, China, which is in close proximity to the City of Tianjin, to the port of Camden, New Jersey.

15. The Rickmers Interests loaded the Goods onto Rickmers Genoa at Xingang, and stowed them in Hold No. 1 and on Hatch No. 1, the forward-most locations on Rickmers Genoa.

16. After departing Xingang, Rickmers Genoa continued her voyage, calling at several ports in China to load and discharge other cargoes.

17. On or about March 8, 2005, while proceeding northbound from Shanghai to Qingdao, in the middle of a foggy night in the Yellow Sea (off the coasts of China and Korea), Rickmers Genoa collided with the Korean-flagged bulk carrier Sun Cross.

18. As a result of the collision, Sun Cross rapidly sank, with the loss of 13 lives, and Rickmers Genoa was damaged, causing flooding and fires in the forward spaces of the ship (hereinafter referred to as "the Casualty").

19. The Goods caught on fire as a result of the Casualty. Once ignited, the Goods burned brightly at high temperatures and were totally destroyed.

20. The Goods will not spontaneously combust, and did not contain, and would not emit, any flammable gas. The $H_2O$ molecules in seawater (or a mixture of seawater, acids, and corrosive chemicals) can release hydrogen in certain circumstances.

21. With the assistance of the crew and professional salvors, the fire was confined to the forward portion of Rickmers Genoa, and the ship was able to safely return to Shanghai.

22. ESM Group purchased the Goods on CIF terms, and is the holder of a negotiable (to order and onboard) bill of lading covering the Goods dated March 3, 2005, and issued by Pudong, as carrier.

7. Defendant and Third-Party Defendant, Pudong Trans USA Inc. ("Pudong"), is a corporation formed in a State within the United States that provides ocean transportation as a non-vessel operator and contract carrier.

8. ESM Group is a corporation organized under the laws of the State of Delaware with its principal office in Amherst, New York.

### THE BACKGROUND

9. On or about March 3, 2005, six hundred (600) metric tons of granulated magnesium in good order and condition, were safely placed into thirty (30) twenty-foot containers, each containing twenty (20) metric tons in twenty (20) bags (hereinafter "the Goods").

10. The Goods consisted of grey metal granules, approximately the size of coarse beach sand, made by grinding magnesium ingots. The granules were in bags (coated polypropylene super sacks) that had been placed on shrink-wrapped pallets and loaded into the 30 twenty-foot containers. Used in steel making, the Goods are designed to be injected into molten iron ore to remove sulphur and make the steel less brittle. Because they remove sulphur and consist of eighty-nine percent magnesium, they are sold under the trade name "Super-Sul Mg-89."

11. Magnesium is a very common metal and the eighth most abundant element in nature. Used in numerous everyday goods, including automobile parts and beverage cans, magnesium melts at about 1200°F, and will not start to boil until heated above 2000°F.

12. The supplier, ESM (Tianjin) Co., Ltd., at its laboratory in Tianjin (which is certified for ISO 9001:2000 standards and procedures and regularly audited by SGS United Kingdom Ltd.), checks the safety of the Goods by testing them against a set of internationally-developed standards. It also treats them with a proprietary safety coating designed to increase their safety in and around steel making furnaces (and also for transportation and handling). The tests include those set forth in the "Classification Procedures, Test Methods and Criteria Relating to Class 4 Solids" of the "U.N. Manual of Tests and Criteria." These tests are designed to determine whether the goods to be transported fall above or below internationally-determined thresholds relating to recognized hazards in transportation. The test results for the Goods confirmed that the U.N. Manual thresholds were not exceeded (in fact, they were about seventy-five percent below the threshold for hazards when wet).

## CROSS-CLAIMS AND COUNTERCLAIMS OF ESM GROUP INC.

ESM Group Inc. ("ESM Group"), by its attorneys, Burke & Parsons, respectfully asserts its Counterclaims against Plaintiff, Chem One Ltd., its Cross-Claims and Counterclaims against Defendants and the Third-Party Plaintiffs, Rickmers-Linie GmbH & Cie. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, and Genoa Navigation Co. Ltd. (the "Rickmers Interests"), and its Cross-Claims against Defendants and Third-Party Defendants, U.S. Shipping, Inc., and Pudong Trans USA Inc.:

## JURISDICTION AND PARTIES

1. This Court has jurisdiction for these Cross-Claims and Counterclaims under 28 U.S.C. § 1333, because they are maritime claims, which should be governed by the terms of Fed. R. Civ. P. 9(h), and this Court has supplemental jurisdiction over the Cross-Claims and Counterclaims because they arise out of the same maritime casualty and occurrence as alleged in the Complaints and Third-Party Complaint.

2. Plaintiff, Chem One Ltd., is a chemical supplier in the United States whose business includes importing dangerous chemicals from China.

3. Defendant and Third-Party Plaintiff, Rickmers-Linie GmbH & Cie. KG, is a German corporation or limited liability entity that owns, controls, or operates the containership and motor vessel Rickmers Genoa in its business as an ocean carrier.

4. Defendant and Third-Party Plaintiff, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, is a German corporation or limited liability entity that owns, controls, or operates Rickmers Genoa.

5. Defendant and Third-Party Plaintiff, Genoa Navigation Co. Ltd., is a foreign corporation or limited liability entity that owns, controls, or operates Rickmers Genoa.

6. Defendant and Third-Party Defendant, U.S. Shipping, Inc., is a corporation incorporated in a State within the United States that provides services for maritime transportation companies.

Christopher H. Dillon (CD-7321)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHEM ONE LTD., et al.,**<br>        **Plaintiffs,**<br>   - against –<br>M/V RICKMERS GENOA and M/V SUN CROSS, their engines, boilers, etc., *in rem*; RICKMERS GENOA SCHIFFAHRTSGES mbH & Cie. KG., UNITED SHIPPING SERVICES, INC., SESCO GROUP INC., CS MARINE CO. LTD., ESM GROUP INC., and ESM (TIANJIN) CO., LTD., *in personam,*<br>        **Defendants.**<br>_____<br>**SHANDONG INDUSTRIAL INC.,**<br>        **Plaintiff,**<br>   - against –<br>M/V RICKMERS GENOA, her engines, boilers, etc.; M/V SUN CROSS, her engines, boilers, etc.; RICKMERS-LINIE GmbH & CIE. KG; RICKMERS GENOA SCHIFFAHRTSGES mbH & CIE KG; GENOA NAVIGATION CO. LTD.; C S MARINE CO., LTD.; SUNWOO MERCHANT MARINE CO. LTD.; ESM GROUP INC., ESM (TIANJIN) CO., LTD.; PUDONG TRANS USA INC.; and U.S. SHIPPING, INC.<br>        **Defendants.**<br>_____<br>**ST. PAUL TRAVELERS, as *subrogee* of FOREIGN TIRE SALES, INC.**<br>        **Plaintiff,**<br>   - against –<br>M/V RICKMERS GENOA and MV SUN CROSS, their engines, boilers, tackle, etc.; and ZEN CONTINENTAL CO., INC., RICKMERS GENOA SCHIFFAHRTSGES GmbH and CIE. K.G., RICKMERS-LINIE GmbH and CIE. KG and SUNWOO MERCHANT MARINE CO., LTD.<br>        **Defendants.**<br>_____<br>**ATLANTIC COAST YACHT SALES, INC.**<br>        **Plaintiff,**<br>   vs.<br>M/V RICKMERS GENOA, her engines, boilers, etc., M/V SUN CROSS, her engines, boilers, etc., RICKMERS-LINIE GmbH & CIE, KG, RICKMERS GENOA SCHIFFAHRTSGES, mbh & CIE, KG, GENOA NAVIGATION CO. LTD., CS MARINE CO. LTD., ESM GROUP INC., ESM (TIANJIN) CO., LTD., PUDONG TRANS USA, INC., and U.S. SHIPPING, INC.<br>        **Defendants.**<br>_____<br>**RICKMERS-LINIE GmbH & Cie. KG; RICKMERS GENOA SCHIFFAHRTSGES mbH & Cie. KG; and GENOA NAVIGATION CO. LTD.;**<br>        **Third-Party Plaintiffs,**<br>   - against –<br>ESM GROUP INC.; ESM (TIANJIN) CO., LTD.; PUDONG TRANS USA, INC.; and U.S. SHIPPING, INC.<br>        **Third-Party Defendants.** | 05 CV 4261 (LAP-THK)<br>05 CV 6226 (LAP-THK)<br>05 CV 8841 (LAP-THK)<br>05 CV 9472 (LAP-THK)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COUNTERCLAIMS AND CROSS-CLAIMS OF ESM GROUP INC.**<br><br>**Electronically Filed** |