JAMES P. KRAUZLIS, ESQ.
BADIAK & WILL, LLP
Attorneys for Plaintiff
106 Third Street
Mineola, New York 11501-4404
(516) 877-2225
Our ref: 05-F-024-JK

-----------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ST. PAUL TRAVELERS as subrogee of
FOREIGN TIRE SALES, INC.

        Plaintiff,

- against -                                                        05 CV 8841 (LAP)

M/V "RICKMERS GENOA" and                                           **THIRD AMENDED**
M/V "SUN CROSS"; their engines,                                    **COMPLAINT**
boilers, tackle, etc., <u>in rem</u>; RICKMERS
GENOA SCHIFFAHRTSGES GmbH & Cie. KG;
RICKMERS-LINIE GmbH & Cie.KG;
UNITED SHIPPING SERVICES, INC.; SESCO
GROUP INC.; CS MARINE CO. TD.; SUNWOO
MERCHANT MARINE CO., LTD.;
JA SUNG MARINE CO., LTD.; ESM GROUP, INC.;
PUDONG TRANS USA INC.; ESM (TIANJIN)
CO., LTD. ESM II, INC. and ESM II LP,
<u>in personam</u>

        Defendants.
-----------------------------------------------------------------x

      Plaintiff, by its attorneys **BADIAK & WILL, LLP** alleges upon information and belief, as follows:

## JURISDICTION AND THE PARTIES

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At and during all times hereinafter mentioned, plaintiff was and still is a corporation duly organized and existing under and by virtue of the laws of one of the United States of America with an office and place of business located at 233 Broadway, New York, New York 10272.

3. At and during all times hereinafter mentioned, all the defendants with the exception of **ESM GROUP, INC. ("ESMG), ESM (TIANJIN) CO., LTD. ("ESMT"), ESM II, INC., EMS II LP, M/V SUN CROSS and CS MARINE CO., LTD.** (hereinafter "Carrier Defendants") were and now are corporations or other business entities with offices and places of business stated in Schedule A, and were and now are engaged in business as common carriers of merchandise by water for hire, and owned, operated, managed, chartered and controlled defendant **M/V RICKMERS GENOA** which now is or will be within the jurisdiction of this Court during the pendency of this action.

4. At and during all times hereinafter mentioned, **ESM GROUP, INC., ESM II INC., ESMII, LP and ESM (TIANJIN) CO., LTD.** (hereinafter "Super Sul Defendants"), were and now are corporations or other business entities and were and now are sister and/or related companies with offices and places of business stated in Schedule A and were, respectively, the buyer/receiver and seller/shipper of a cargo of 600 bags of "Super Sul Mg. 89" which magnesium product exploded and set the **M/V RICKMERS GENOA** and plaintiff's cargoes ablaze during the course of the pertinent voyage.

5. Super Sul Mg 89 is primarily composed of magnesium and prone to generate dangerous and flammable gas.

6. Third-Party Defendants did not provide any warning as to the inherently dangerous nature of this Super Sul Mg 89 cargo.

7.  At and during all time hereinafter mentioned, Ja Sung Marine Co., Ltd., CS Marine Co., Ltd. and Sunwoo Merchant Marine Co., Ltd., were and now are companies or other business entities with offices and places of business stated in Schedule A and were and now are engaged in the business of common carriers by water for hire and owned, operated, managed, chartered and/or controlled defendant M/V SUN CROSS.

## AS AND FOR A
## FIRST CAUSE OF ACTION
## AGAINST THE CARRIER DEFENDANTS

8.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 7 as if set forth herein at length.

9.  On or about March 7, 2005 at the port of Shanghai, there was delivered to the **M/V RICKMERS GENOA** and Carrier Defendants in good order and condition tires, which the **M/V RICKMERS GENOA** and Carrier Defendants received, accepted and agreed to transport for certain consideration to the port of Houston.

10. Thereafter, **M/V RICKMERS GENOA** and Carrier Defendants arrived at the port of Houston and the cargo was delivered damaged and/or is subject to a salvor's and general average lien and the payments related thereto as a result of a casualty at sea. In addition, Carrier Defendants wrongfully and without cause barred certain plaintiffs from surveying their cargoes after the said vessel collided with and sank the **M/V SUN CROSS** in the Yellow Sea on March 7, 2005. Carrier Defendants then tortiously and improperly demanded security for general average contribution for the containers within which certain plaintiffs had stuffed their cargoes when the correct course of action would have ben to have sought such security from the owners/lessors/leasees of said containers.

11. By reason of the premises, the **M/V RICKMERS GENOA** was unseaworthy and Carrier Defendants breached, failed and violated their duties to the plaintiff as common carriers by water for hire and/or bailees and caused additional aggravated damages above and beyond the invoice value of the cargo, as set forth above and were negligent and otherwise at fault.

12. Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

13. Plaintiffs have duly performed all duties and obligations on their part to be performed.

14. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $210,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE SUPER SUL DEFENDANTS
### Strict Liability

15. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 14 as if set forth herein at length.

16. Super Sul Defendants were the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo delivered by the Super Sul Defendants and/or their agents to the **M/V RICKMERS GENOA** or other Carrier Defendants who loaded and stowed it aboard the vessel on the subject voyage.

17. Super Sul Defendants were obligated to adequately warn and/or inform plaintiffs and the Carrier Defendants as to the inherently dangerous nature of the Super Sul MF 89 cargo.

18.     Super Sul Defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

19.     In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the super Sul defendants, as shippers and/or consignees, strictly liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

20.     As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packed, the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the **RICKMERS GENOA** and plaintiffs' cargo on or about March 8, 2005, and further causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

21.     Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipment and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

22.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

23.     By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded int eh amount of $210,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE THE SUPER SUL DEFENDANTS
### Failure to Warn

24. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 23 as if set forth herein at length.

25. Super Sul Defendants as the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo were aware, or should have been aware, of the inherently dangerous nature of the Super Sul 89 cargo prior to delivery to the Carrier Defendants and the **M/V RICKMERS GENOA**.

26. Super Sul defendants were obligated to adequately warn and/or inform plaintiffs and Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo.

27. Super Sul defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

28. In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the super Sul defendants, as shippers and/or consignees, strictly liable for all of the damages and expense directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

29. As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packed, the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the **M/V RICKMERS GENOA** and plaintiff's cargo on or about March 8, 2005, and further

causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

30. Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipment and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

31. Plaintiffs have duly performed all duties and obligations on their part to be performed.

32. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $210,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE THE SUPER SUL DEFENDANTS
#### Negligence

33. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 32 as if set forth herein at length.

34. Super Sul Defendants as the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo were obligated and duty-bound, regardless of knowledge, to adequately warn and/or inform plaintiffs and the Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo and properly package, brace and stow the cargo prior to carriage.

35. Super Sul Defendants were obligated to adequately warn and/or inform plaintiffs and Carriers Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo.

36. Super Sul defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

37. In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the Super Sul defendants, as shippers an/or consignees, strictly liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other and any and all other applicable law.

38. As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packaged, braced and stowed and their own negligence the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the **M/V RICKMERS GENOA** and plaintiffs' cargo on or about March 8, 2005, and further causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

39. Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipment and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

40. Plaintiffs have duly performed all duties and obligations on their part to be performed.

41. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded int eh amount of $210,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE M/V SUN CROSS, JA SUNG MARINE CO., LTD., CS MARINE AND SUNWOO MERCHANT MARINE

42.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 as if set forth herein at length.

43.     On or about March 7, 2004, defendants, **JA SUNG MARINE CO., LTD., CS MARINE CO., LTD. and SUNWOO MERCHANT MARINE CO., LTD.**, owned, operated, chartered, managed, controlled and/or crewed the **M/V SUN CROSS** which vessel was in transit in the South China Sea.

44.     As a result of the unseaworthiness of the **M/V SUN CROSS** and the negligence and incompetence of **JA SUNG MARINE CO., LTD., CS MARINE CO., LTD., SUNWOO MERCHANT MARINE CO., LTD.**, the crew and the master of the **M/V SUN CROSS, the M/V RICKMERS GENOA**, which carried plaintiff's cargo, and the **M/V SUN CROSS** collided and plaintiffs' cargo damaged. As a result of the collision the **M/V SUN CROSS** sank.

45.     By reason of the premises, the **M/V SUN CROSS** was unseaworthy and defendants **JA SUNG MARINE CO., LTD., CS MARINE CO., LTD. and SUNWOO MERCHANT MARINE CO., LTD.** breached failed and violated their duties and obligations to plaintiffs, were negligent and otherwise at fault.

46.     Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipment and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the aid shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

47. Plaintiffs have duly performed all duties and obligations on their part to be performed.

48. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $210,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST THE SUPER SUL DEFENDANTS

49. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41 as if set forth herein at length.

50. ESMG originally produced magnesium desulphurization reagents at its own production facilities in the United States.

51. ESMT was created by ESMG for the sole purpose of taking over the production of magnesium desulphurization reagents, e.g. Super Sul Mg 89.

52. Among other things, ESMG directed ESMT on the process to produce said magnesium desulphurization reagents by providing the chemical formula and technical knowledge.

53. ESMG provised ESMT with the necessary machinery and training for the production of magnesium desulphurization agents.

54. At all material times ESMG controlled and continues to control the manner in which ESMT operates.

55. At all material times, ESMG instructed ESMT as to when and how much Super Sul Mg 89 was to be produced and shipped back to ESMG.

56. Although ESMT ordered the necessary raw materials, in all but a few instances, ESMG directly paid the Chinese raw material suppliers for said raw materials.

57. ESMG had the power to direct ESMT to alter its Material Safety Data Sheet (MSDS") for magnesium granules, limited ESMT's ability to sell products to other buyers and controlled the content and distribution of MSDS's by ESMT to third-parties.

58. At all material times, ESMG and ESMT did not operate as arms-length contracting parties.

59. In view of the foregoing, and other factual circumstances, there existed, and continues to exist, such a relationship between ESMG and ESMT so that ESMG is a principal to ESMT, which acts as agent to ESMG in fulfilling ESMT's sole purpose of producing magnesium desulphurization reagents for ESMG.

60. ESMG, as principal and/or undisclosed principal of its agent ESMT, implied or in fact, is liable for the loss and/or damage caused directly or proximately, but the negligence, breach of contract (express or implied), breach of warranty (express or implied), and/or other wrongful acts or omissions of ESMT.

61. Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments hereinbefore described and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

62. Plaintiffs have duly performed all duties and obligations on their part to be performed.

63. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined, no part of which has been paid although duly demanded in the amount of $210,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (PIERCING THE CORPORATE VEIL)

64. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 as if set forth herein at length.

65. ESMT is a wholly-owned subsidiary of ESMG.

66. ESMG and ESMT have common and/or overlapping directors, so much so that at times ESMT's board was constituted entirely by certain directors of ESMG.

67. ESMT is inadequately capitalized as, among other things, it lacks liability insurance coverage, does not own any real estate, and does not normally have sufficient funds of its own to purchase the raw materials needed to produce the magnesium desulphurization reagents for ESMG.

68. ESMT operates at little to no profit.

69. ESMG provided financing to ESMT in the form of registrations money, start up capital, and machinery in order for ESMT to start its operation. ESMG continues to materially support the operation of ESMT.

70. In practice, ESMG uses ESMT's property and assets as its own, as among other things, ESMG designed ESMT's plant to manufacture Super Sul Mg 89 and supplied the captial; developed the specifications for Super Sul Mg 89; gave the formula for Super Sul Mg 89 to ESMT's production facilities and procedures.

71. ESMG caused the incorporation of ESMT.

72. At all material times, ESMG made and continues to make decisions for ESMT, as among other things, ESMG instructs ESMT as to when and how much magnesium desulphurization

reagent is to be produced; what bags should be used as packaging; what coatings are to be used; whether an MSDS should be issued to third-parties; and who may receive ESMT's production.

73. In addition, ESMT's directors do not act independently in the interest of ESMT, but instead act in the interest of ESMG, and the relationship between ESMG and ESMT, including related contracts, is more favorable to ESMG than ESMT.

74. Given the foregoing, ESMG and ESMT should be held jointly and severally liable to Plaintiffs as a matter of law and in the interests of justics.

75. As such, the corporate veils of ESMG and ESMT should be pierced so as to hold them jointly and severally liable, either on an identity or instrumentality theory.

76. Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments hereinbefore described and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

77. Plaintiffs have duly performed all duties and obligations on their part to be performed.

78. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined, no part of which has been paid although duly demanded in the amount of $210,000.00.

**WHEREFORE**, plaintiff prays:

1. That process in due form of law according to the practice of this Court may issue against defendants.

2.	That if defendant cannot be found within this District, that all of their property within this District, as shall be described in the affidavit, be attached in the sum set forth in this Third Amended Complaint, with interest and costs.

3.	That a decree be entered in favor of plaintiffs and against the **M/V RICKMERS GENOA** and the Carrier Defendants in the first cause of action in the amount of plaintiffs' damages, together with interest and costs.

4.	That a decree be entered in favor of plaintiffs against **ESM GROUP INC. and ESM (TIANJIN) CO., LTD.** on the second, third and fourth, sixth and seventh causes of action in the amount of plaintiffs' damages, together with interest and costs.

5.	That a decree be entered in favor of plaintiffs against the **M/V SUN CROSS, JA SUNG MARINE CO., LTD., CS MARINE CO., LTD. and SUNWOO MERHCANT MARINE CO., LTD.** on the fifth cause of action in the amount of plaintiffs' damages, together with interest and costs.

6.	That a decree be entered in favor of plaintiffs against the Carrier Defendants adjudging that the declaration of general average by the Carrier Defendants was improper and, therefore, plaintiffs are not required to contribute in general average and salvage and are entitled to a refund of any payments heretofore made.

7.	That process in due form of law according to the practice of this Court may issue against the aforesaid named vessel.

8.  Plaintiff further prays for such other, further and different relief as to this Court may seem just and proper in the premises.

DATED:   New York, New York
         April 24, 2009

                                Yours, etc.

                                BADIAK & WILL, LLP
                                Attorneys for Plaintiff
                                ST. PAUL TRAVELERS as subrogee of
                                FOREIGN TIRE SALES, INC.
                                106 Third Street
                                Mineola, New York 11501-4404
                                (516) 877-2225
                                Ref.: 05-F-024-JK

                                _____
                                JAMES P. KRAUZLIS

# SCHEDULE A

Rickmers Genoa Schiffahrtsges GmbH & Cie KG
c/o Rickmers Reederei GmbH & Cie KG
Neumuhleu 19
Hamburg, Germany 22763

and c/o Fowler Rodriguez & Chalos LLP
366 Main Street
Port Washington, New York 11050
Attn: Eugene O'Connor

Rickmers Linie GmbH & Cie. KG
Neumuhleu 19
Hamburg, Germany 22763

and c/o Fowler Rodriguez & Chalos LLP
366 Main Street
Port Washington, New York 11050
Attn: Eugene J. O'Connor, Esq.

SESCO Group Inc.
19 E. Live Oak Avenue
Arcadia, California 91006-5200

CS Marine Co. Ltd.
9F Ocean B/D
76-13 4GA, Chunggang Dong, Chung Gu
Busan, Korea

and/ c/o Freehill Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005-1759
Attn:                          James L. Ross, Esq.

ESM Group, Inc.
300 Corporate Parkway - 26IN
Amherst, New York 14226

and c/o CT Corporation System (Registered Agent for accepting service of process)
111 Eighth Avenue
New York, New York 10011

and c/o Burke & Parson
100 Park Avenue
New York, New York 10017-5537
Attn: Raymond J. Burke., Jr., Esq.

ESM II, INC.
300 Corporate Parkway - 261N
Amherst, New York 14226

ESM II LLP
300 Corporate Parkway - 261N
Amherst, New York 14226

Sunwoo Merchant Marine Co., Ltd.
3F Dongwon building
128-27 Dangju-dong
Chongno-gu Seoul 110-071
South Korea

ESM (Tianjin) Co., Ltd.
28-H Yun Xiang Building, 72-72#
X1 Kang Road
He Ping District
Tianjin, Peoples Republic of China

Pudong Trans USA Inc.
9960 Fair Drive #328
El Monk, California 91731